Veronika Fabian, State Bar 018770
Hyung S. Choi, State Bar 015669
CHOI & FABIAN, PLC
90 S. Kyrene Rd., Suite #5
Chandler, Arizona  85226
tel:  (480) 517-1400
fax: (480) 517-6955
Flagstaff: (928) 779-2226
veronika@choianfabian.com
  *Attorneys for the Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

Mary Bresee,

        Plaintiff,

    vs.

Wells Fargo Bank, National Association
d/b/a Wells Fargo Dealer Services; Steve
Coury Ford, Lincoln-Mercury, Inc. d/b/a
Steve Coury Ford Lincoln, and Steven
and Julie Ann Coury,

        Defendants.

NO. _____

## COMPLAINT
## AND
## DEMAND FOR JURY TRIAL

## **INTRODUCTION**

1.    Defendant Wells Fargo Bank, National Association d/b/a Wells Fargo Dealer

Services ("Wells Fargo") reported and verified a trade line on Plaintiff Mary

Bresee's credit reports for a debt she did not owe.  Ms. Bresee repeatedly

attempted to get Wells Fargo to remove the trade-line, through phone calls to

Wells Fargo and disputes to the credit bureaus.  Because of the incorrect trade-

line, Ms. Bresee was denied financing for a home improvement loan and a car loan. It was not until seven months after it was first reported that Wells Fargo finally did what it should have done all along and deleted the tradeline.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1681p.

3. This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367.

## PARTIES

4. Plaintiff Mary Bresee ("Ms. Bresee") is a resident of Council, Idaho, formerly a resident of Happy Jack, Arizona.

5. Defendant Wells Fargo is a federally chartered United States bank, a California corporation, and licensed to do business in the state of Arizona.

6. Wells Fargo regularly purchases, and accepts assignments of, retail installment sales contracts.

7. Defendant Steve Coury Ford, Lincoln-Mercury, Inc. d/b/a Steve Coury Ford Lincoln ("Steve Coury Ford") was a licensed car dealership located at 5990 E. Coury Drive, Camp Verde, AZ.

8. Steve Coury Ford was engaged in the business of buying, selling and offering to sell new and used motor vehicles.

9. Defendant Mr. Coury is an individual, residing in Yavapai County, Arizona.

10. Defendant Julie Ann Coury ("Ms. Coury") is Mr. Coury's wife.

11. Mr. Coury's acts and omissions set forth below were done in furtherance of his marital community with Ms. Coury.

12. Steve Coury Ford, Mr. Coury, and Ms. Coury shall be referred to collectively as the Steve Coury Defendants.

## **FACTS**

### **The Original Transaction**

13. On February 17, 2014, Ms. Bresee went to Steve Coury Ford to purchase a vehicle and trade in her 2011 Ford Fiesta ("the Fiesta" or "the trade-in").

14. The Fiesta had a lien on it held by Wells Fargo.

15. The lien amount was approximately $12,751.56.

16. Ms. Bresee selected a new 2013 Ford Transit ("the Transit") to purchase.

17. Ms. Bresee and Steve Coury Ford signed a Retail Installment Sales Contract for the purchase and financing of the Transit ("the RISC").  (RISC attached as Exh. A).

18. Under the RISC, Steve Coury Ford listed the Fiesta as a trade-in with a gross allowance of $8,250.00, a pay off of $12.751.56, and negative equity under the contract of $4,501.56.

19. Ms. Bresee and Steve Coury Ford also signed a Buyer's Order.  (Buyer's Order attached as Exh. B).

20. The Buyer's Order also listed the Fiesta as a trade-in and included the same Payoff Information to Wells Fargo.

3

21.   Steve Coury Ford represented to Ms. Bresee, in the contractual paperwork and otherwise, that it would pay off the lien on her trade-in to Wells Fargo in the ordinary course of business.

22.   Upon information and belief, Steve Coury Ford did not intend to pay off the lien on Ms. Bresee's trade-in in the ordinary course of business, if at all.

23.   Upon information and belief, Mr. Coury directed his employees to make this misrepresentation regarding the payoff on Ms. Bresee's trade-in.

24.   In the alternative, upon information and belief, Mr. Coury was aware that Steve Coury Ford employees made this misrepresentation regarding the payoff to Ms. Bresee but did nothing to remedy it.

25.   Both the Buyers Order and the RISC required that Ms. Bresee make a cash downpayment of $3,000.00.

26.   Ms. Bresee made a cash downpayment of $3,000.00 on February 17, 2014 to Steve Coury Ford.

27.   The RISC provides:

> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

("The Holder Liability Clause").

28.   The RISC was subsequently assigned to Wells Fargo.

4

29. Thus, Wells Fargo was the lienholder on both the Fiesta and the Transit.

**Steve Coury Ford Sells the Trade-in But Does Not Pay Off the Lien**

30. On March 13, 2014, Steve Coury Ford sold the Fiesta to Richard P. Dexter. (Letter from ADOT attached as Exh. C).

31. Steve Coury Ford did not, however, pay off the lien held on the Fiesta by Wells Fargo.

32. Nonetheless, Wells Fargo financed Mr. Dexter's purchase of the Fiesta from Steve Coury Ford even though it already had a lien on the Fiesta by virtue of Ms. Bresee's transaction.

33. Wells Fargo then took another lien on the Fiesta to secure Mr. Dexter's loan.

34. Ms. Bresee was completely unaware that Steve Coury Ford sold the Fiesta and that the sale was financed by Wells Fargo.

**Steve Coury Ford Makes Some Untimely Payments on the Fiesta Loan**

35. Ms. Bresee's monthly payments of $289.33 for the Fiesta were due to Wells Fargo on the 13th of each month.

36. Therefore, at the time she traded in the Fiesta on February 17, 2014, her next payment was not due until March 13, 2014.  (Wells Fargo statement dated 1/24/14 attached as Exh. D).

37. At the time she traded-in the Fiesta, Ms. Bresee owed only $166.68 on her March payment because she was ahead on her payments.

38.   As noted above, Steve Coury Ford did not pay off the lien on the Fiesta held by Wells Fargo.

39.   Instead, on April 2, 2014 (20 days late), Steve Coury Ford made a $410.00 payment on the loan.   (Wells Fargo statement dated 4/12/14 attached as Exh. E).

40.   When Ms. Bresee received her statement and realized that her trade-in lien had not been completely paid off, she called Heath Wacker ("Wacker"), a manager at Steve Coury Ford.

41.   At all relevant times, Wacker was an employee of, and acted within the scope of his actual or apparent authority for, Steve Coury Ford.

42.   Wacker promised to take care of the pay off.

43.   In April 2014, Steve Coury Ford neither paid off the entire balance on the trade-in nor made Ms. Bresee's monthly payment on the trade-in loan.

44.   When Wells Fargo did not receive a payment in April, Wells Fargo called Ms. Bresee and asked her whether she wanted to make a payment.

45.   Ms. Bresee told Wells Fargo that she had traded-in the Fiesta at Steve Coury Ford in February of 2014.

46.   Ms. Bresee told Wells Fargo to contact Steve Coury Ford for payment.

47.   Ms. Bresee told Wells Fargo that her new vehicle loan from Steve Coury Ford was also financed through Wells Fargo.

48.   Ms. Bresee then contacted Steve Coury Ford and spoke to Wacker.

49.    Wacker informed Ms. Bresee that the payoff check would be in the mail as soon as his controller got back in the office.

50.    Wacker told her that his controller was not in the office for a few days.

51.    On April 25, 2014, Ms. Bresee emailed Wacker about the trade-in payoff and informed him that the bank had called and asked about the payment.  (Email attached as Exh. F).

52.    Wacker did not respond to that email.

53.    Steve Coury did not pay off the balance of the loan.

54.    Instead, on April 25, 2014, Steve Coury Ford made a payment of $173.81 ($166.68 plus late fee) on the Fiesta loan.

55.    In May of 2014, Steve Coury did not pay off the entire balance on the Fiesta loan.

56.    Nor did it make her monthly payment on the Fiesta loan due on May 13, 2014.

57.    When Wells Fargo did not receive Ms. Bresee's May 13, 2014 payment, it again contacted Ms. Bresee.

58.    Wells Fargo informed Ms. Bresee that she had a past due balance of $303.80 ($289.33 plus late fee).

59.    Wells Fargo asked Ms. Bresee if she wanted to make a payment.

60.    Once again, Ms. Bresee had to tell Wells Fargo that she had traded in the Fiesta at Steve Coury Ford in February.

61.    Ms. Bresee told Wells Fargo that it should contact Steve Coury Ford for the pay off.

62.  Ms. Bresee then called Steve Coury Ford.

63.  At that time, she learned that Wacker no longer worked at Steve Coury Ford.

64.  She was referred to Shad LeBlanc ("LeBlanc"), the general manager of Steve Coury Ford.

65.  At all relevant times, LeBlanc was an employee of, and acted within the scope of his actual or apparent authority for, Steve Coury Ford.

66.  LeBlanc informed Ms. Bresee that the payoff check was being resent.

67.  LeBlanc informed Ms. Bresee that he was not really sure what happened with the first check.

68.  On May 24, 2014, Ms. Bresee called and spoke to LeBlanc who informed her that he had made a payment of $303.80 on that same day by phone.

69.  In June of 2014, Steve Coury Ford did not pay off the entire balance on the Fiesta loan.

70.  Nor did it make the monthly payment due on June 13, 2014 on the Fiesta loan.

71.  On June 14, 2014, Ms. Bresee took public transit to the Steve Coury dealership in Starr Valley (a separate corporate entity) and talked to Tiffany Bailey who was the manager there.

72.  Ms. Bailey told Ms. Bresee that she would talk to Mr. Coury personally about the situation.

73.  Ms. Bailey told Ms. Bresee that Steve Coury Ford would give her a check for $180-$200.00 for late fees and inconvenience.

74. On or about June 23, 2014, Ms. Bresee called Ms. Bailey to follow up on that check.

75. Ms. Bailey told Ms. Bresee that a check had been mailed the previous week.

76. However, Ms. Bresee never received a check in the mail.

77. Throughout the month of June, Ms. Bresee left one to two messages a week for either LeBlanc or Mr. Coury.

78. Neither LeBlanc nor Mr. Coury returned her messages.

79. On July 2, 2014, Ms. Bresee received another phone call from Wells Fargo.

80. Once again, Wells Fargo was attempting to collect payment for the June 13th payment that Steve Coury Ford had not made.

81. This time she spoke to a Wells Fargo representative named Raz.

82. Ms. Bresee told Raz what was going on.

83. This was the third time Ms. Bresee had to tell Wells Fargo that she had traded in the Fiesta at Steve Coury Ford.

84. Ms. Bresee's July statement from Wells Fargo showed that she was past due $289.33, had been charged an additional $14.47 for a late charge, owed an additional payment of $289.33, for a total amount due of $593.13.  (Copy of statement attached as Exh. G).

85. On July 8, 2014, Mr. Coury finally called back and left Ms. Bresee a message stating that he had been sick for a few months and would take care of the problem.

86. On July 21, 2014, LeBlanc told Ms. Bresee that Steve Coury Ford had sent the payoff check directly to Carlos in Phoenix on Friday, July 18th and that the check should be there by July 22nd.

87. On July 25, 2014, Ms. Bresee called Wells Fargo to see if Wells Fargo had received Steve Coury's claimed check for the payoff.

88. Wells Fargo had not yet received the claimed check for the payoff.

89. On July 28, 2014, Ms. Bresee called Wells Fargo to check once again on the payoff.

90. Once again, Wells Fargo told Ms. Bresee that it had not received a payoff check from Steve Coury Ford.

91. Wells Fargo also informed Ms. Bresee that it had put Ms. Bresee's account into collections and she would not be able to access the Fiesta loan online.

**Wells Fargo Denies That It Is Subject To Any Claims And Defenses Ms. Bresee Has Against Steve Coury Ford**

92. On August 1, 2014, Ms. Bresee called Raz at Wells Fargo and read to him the Holder Liability Clause in the RISC.

93. Ms. Bresee told him that the Holder Liability Clause means that Wells Fargo, is subject to any claims that she had against Steve Coury Ford.

94. On this basis, Ms. Bresee asked Wells Fargo to take care of the lien on her trade-in, either by cancelling it or otherwise.

95. Raz told her that Wells Fargo was not obligated under the Holder Liability Clause in the RISC.

96.   Raz told her that if her interpretation was correct, it would mean Wells Fargo would have to pay off any claim against the seller when they were the holder of a contract.

97.   Ms. Bresee then asked Raz to explain to her what the Holder Liability Clause meant.

98.   Raz told her that he could not really tell her what the Holder Liability Clause meant because he did not have a copy of the RISC.

**Wells Fargo Reports on Ms. Bresee's Credit Report that the Fiesta Loan is Past Due**

99.   On August 22, 2014, Ms. Bresee checked her Experian credit report and found that it was showing that her Wells Fargo account was 30 days past due. (Excerpt from Ms. Bresee's Experian credit report attached as Exh. H).

100.   Ms. Bresee's Experian credit report also showed that she had a balance of $12,434 as of 7/2014.

101.   On September 2, 2014, Ms. Bresee submitted a dispute to Experian, explaining why the Wells Fargo item on her credit report was inaccurate.  (Dispute attached as Exh. I).

102.   On September 10, 2014, Experian sent Ms. Bresee a response stating:

> We have reviewed the documentation you provided with your dispute, but have determined that we are not able to use it to make the changes or deletions you requested.  We are contacting the furnisher of the information or the vendor who collected the information from a public record source.  When we complete our processing of your dispute, which may take up

to 30 days (or up to 45 days for a dispute of information in an annual free credit reports, we will send you the results.

103.   Upon information and belief, Experian forwarded Ms. Bresee's dispute to Wells Fargo.

104.   Wells Fargo verified that the account was accurate.

105.   Wells Fargo's investigation of Ms. Bresee's dispute was not reasonable.

106.   One day after its initial letter, on September 11, 2014, Experian responded stating that the account was updated to show a balance of $12,434 and past due by $607 as of September 2014.  (Excerpt from response attached as Exh. J).

107.   On September 17, 2014, Ms. Bresee submitted a dispute to Equifax, explaining why the Wells Fargo item on her credit report was inaccurate.  (Dispute attached as Exh. K).

108.   Upon information and belief, Equifax forwarded her dispute to Wells Fargo.

109.   Wells Fargo verified that the account was accurate.

110.   Wells Fargo's investigation of Ms. Bresee's dispute was not reasonable.

111.   On October 2, 2014, Equifax sent Ms. Bresee a response to her dispute stating that it had been updated to show that the account was 90-119 days past due and that there was a balance of $12,434.00.  (Excerpt from response attached as Exh. L).

112.   On September 17, 2014, Ms. Bresee submitted a dispute to TransUnion, explaining why the Wells Fargo item on her credit report was inaccurate. (Dispute attached as Exh. M).

113.   Upon information and belief, Transunion forwarded her dispute to Wells Fargo.

114.   Wells Fargo verified that the account was accurate.

115.   Wells Fargo's investigation of Ms. Bresee's dispute was not reasonable.

116.   On October 1, 2014, TransUnion sent Ms. Bresee a response to her dispute stating that it had been updated to show that the account was 90 days past due and that there was a balance of $12,434.00.  (Excerpt from response attached as Exh. N).

**Wells Fargo Promises to Take Item Off of Her Credit Report But Does Not.**

117.   On October 21, 2014, Wells Fargo called Ms. Bresee and told her that she did not have to pay off the lien on the trade-in, that it would be removing its derogatory trade line from her credit report, and that it would send her a letter to that effect.

118.   After receiving this phone call, Ms. Bresee was very relieved as she believed that everything had been resolved.

119.   However, Wells Fargo did not send Ms. Bresee a letter stating that she did not have to pay off the lien and that its derogatory trade line would be removed from her credit.

120.   Instead, Ms. Bresee received a letter from Wells Fargo dated Oct. 17, 2014 stating that her account had been charged off.  (Letter attached as Exh. O).

121.   In response to the letter, Ms. Bresee called Wells Fargo.

122.   The first individual she spoke to told Ms. Bresee that the account had been charged off in an amount in excess of $12,000.00.

13

123. Ms. Bresee explained the situation and was transferred to a second Wells Fargo employee.

124. The second Wells Fargo employee told her that she did not have to pay off the lien on the trade-in, that it would be removed from her credit report, and that she would receive a letter to that effect.

125. Once again, Ms. Bresee felt relieved as she believed that the matter had been resolved.

126. However, once again Wells Fargo did not send her a letter to that effect.

127. Over one and a half months after her phone call with Wells Fargo, on December 17, 2014, Ms. Bresee pulled her Experian credit report.  (Excerpt from Wells Fargo credit report attached as Exh. P).

128. On her Experian Credit Report, Wells Fargo had listed the account as a charge off.

129. Her Experian Credit Report indicated that the account was past due as of July, 2014.

130. Her Experian Credit Report listed the Wells Fargo account as a "Key Derogatory" as of October of 2014.

131. Finally, under the comments section for the Wells Fargo item, Ms. Bresee's Experian credit report stated "Subscriber reports dispute resolved-consumer disagrees."

132.   Ms. Bresee was very upset because she had believed Wells Fargo was going to take care of everything as it had promised to do.

133.   The Wells Fargo item was the only negative item she had on her credit report.

**Ms. Bresee's Credit Was Damaged.**

134.   On December 30, 2014, Ms. Bresee traveled from her home in Council, Idaho to Weiser, Idaho, a one-way trip of 1.5 hours.

135.   Having recently moved into a new home in Council, Idaho, Ms. Bresee was interested in getting a home improvement loan.

136.   Ms. Bresee applied for a $15,000.00 loan for a home improvement at Gem Credit Union.

137.   Gem Credit Union denied her application for credit and informed her that it could only loan her $2,800.00 at 15 percent interest.

138.   Upon information and belief, Gem Credit Union would have approved her loan application but for the Wells Fargo tradeline that remained on her credit report.

139.   Ms. Bresee also stopped by a car dealership to see whether it would make sense to take advantage of the end of the year sales.

140.   The name of the dealership was Steve's Hometown Motors.

141.   She asked what interest rate she could qualify for on a new 2014 Ford Transit.

142.   Steve's Hometown Motors told her that she had a 643 credit score and that with that credit score she could only qualify for 6 percent financing.

143. At the end of December, 2014, Ford Motor Credit was offering 0% financing for Tier A customers.

144. Upon information and belief, Ms. Bresee would have qualified for 0% financing but for the Wells Fargo tradeline that remained on her credit report.

145. Finally, Wells Fargo sent Ms. Bresee a letter, dated January 7, 2015, stating that it had deleted the negative information from her credit report.  (Wells Fargo letter attached as Exh. Q).

146. On February 4, 2015, Ms. Bresee pulled her credit report to confirm that Wells Fargo had actually removed the negative item from her credit report.

147. Ms. Bresee found that Wells Fargo item had finally been removed and that her credit score was now 812 and considered exceptional.

**The Steve Coury Dealerships Have a Pattern and Practice of Not Paying Off its Customers' Trade-Ins**

148. The Steve Coury dealerships have a pattern and practice of failing to pay off its customers' trade-ins in the normal course of business.  *See Hayward f/k/a/ Cifuentes v. Steve Coury Buick, Pontiac & GMC Truck, Inc. d/b/a Steve Coury Buick*, Yavapai County Superior Court, Case No.  V1300CV201280011.

149. Steve Coury Ford is now in receivership due to its failure to pay its obligations.  *Bank of the West v. Steve Coury Buick, Pontiac & GMC Truck, Inc. et al.*, Maricopa County Superior Court, Case No. CV2014-007408.

# CAUSES OF ACTION

## CAUSE OF ACTION NO. 1: VIOLATION OF THE FCRA
### (Against Wells Fargo Only)

150. Wells Fargo violated the FCRA by willfully and/or negligently failing to conduct a reasonable investigation of Ms. Bresee's dispute in accordance with 15 U.S.C. § 1691s-2(b).

151. As a result of Wells Fargo's violation of the FCRA, Ms. Bresee was damaged in an amount to be determined by this Court.

152. Wells Fargo's conduct, action and inaction was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 6181n.

153. In the alternative, it was negligent, entitling Plaintiff to recover her actual damages under 15 U.S.C. § 1681o.

154. Plaintiff is entitled to recover actual and/or statutory damages, costs and attorney's fees from Wells Fargo pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## CAUSE OF ACTION NO. 2: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against Wells Fargo Only)

155. An implied covenant of good faith and fair dealing arises in the execution and performance of every contract.

156. The purpose of the implied covenant of good faith and fair dealing is so "neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship.

157. Wells Fargo breached the implied covenant of good faith and fair dealing by:

    a. Misrepresenting that it was not subject to any claims and defenses that she had against Steve Coury Ford under the Holder Liability Clause in the RISC;

    b. Failing to offset Ms. Bresee's claims against Steve Coury Ford against the alleged amount owed for the Fiesta;

    c. Misrepresenting to Ms. Bresee that it would not seek the deficiency and would remove the Wells Fargo trade line from her credit report;

    d. By reporting a derogatory trade line for the Fiesta on Ms. Bresee's credit report.

158. As a result of Wells Fargo's breach of the implied covenant of good faith and fair dealing, Ms. Bresee suffered damages in an amount to be determined by the Court.

159. Ms. Bresee is entitled to recover her actual damages.

### CAUSE OF ACTION NO. 3: BREACH OF CONTRACT
### (Against Steve Coury Ford and Wells Fargo)

160. Steve Coury Ford's failure to pay off the lien on the Fiesta constitutes a breach of contract.

161. As a result of Steve Coury Ford's breach of contract, Ms. Bresee suffered damages in an amount to be determined by this Court.

162. Therefore, Ms. Bresee is entitled to recover her actual damages.

163. Pursuant to the express terms of the RISC, Wells Fargo is subject to any claims or defenses, which Ms. Bresee could assert against Steve Coury Ford.

164. As holder of the RISC, Wells Fargo is subject to any claims or defenses which Ms. Bresee could assert against Steve Coury Ford.  16 C.F.R. §433.

## CAUSE OF ACTION NO. 4: VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT
### (Against All Defendants)

165. In connection with the sale of the Transit to Ms. Bresee, Steve Coury Ford made the following misrepresentations and omissions of material fact:

   a.   That it would pay off the lien on the trade-in in the normal course of business;

   b.   That it had sent checks to pay off the trade-in to Wells Fargo when it had not; and,

   c.   That it would reimburse her for late charges and the inconvenience of their untimely payoff on the trade-in.

166. Steve Coury Ford made these misrepresentations and omissions of material fact with the intent that Ms. Bresee rely on them.

167. Mr. Bresee did rely on Steve Coury Ford's misrepresentations and omissions of material fact and as a result, purchased the Transit and traded in the Fiesta.

168. As a result, Ms. Bresee has suffered damages in an amount to be determined by this Court.

169.   Upon information and belief, Mr. Coury directed his employees to make the above-misrepresentations to Ms. Bresee.

170.   In the alternative, upon information and belief, Mr. Coury was aware that Steve Coury Ford employees made the above-misrepresentations to Ms. Bresee but did nothing to remedy the situation.

171.   The Steve Coury Defendants' actions and omissions constitute a violation of the Arizona Consumer Fraud Act ("ACFA").  A.R.S. § 44-1522.

172.   In violating the ACFA, the Steve Coury Defendants acted with an evil mind, intending to economically injure Ms. Bresee or consciously disregarding the substantial risk that its conduct would cause significant economic harm to Ms. Bresee.

173.   Ms. Bresee is therefore entitled to recover her actual and punitive damages.

174.   Pursuant to the express terms of the RISC, Wells Fargo is subject to any claims or defenses, which Ms. Bresee could assert against Steve Coury Ford.

175.   As the current holder of the contract, Wells Fargo is subject to any claims and defenses that Ms. Bresee could assert against Steve Coury Ford.  16 C.F.R. 433.

**CAUSE OF ACTION NO. 5: CONVERSION**
**(Against All Defendants)**

176.   Steve Coury Ford's sale of the Fiesta without paying off the lien on the vehicle constitutes a conversion of the Fiesta.

177.   Upon information and belief, Mr. Coury directed his employees or agents to sell the Fiesta without paying off the lien.

20

178.   In the alternative, upon information and belief, Mr. Coury was aware that Steve Coury Ford employees and agents sold the Fiesta without paying off the lien on the trade-in but did nothing to remedy the situation.

179.   The Steve Coury Defendants' actions constitute conversion of the Fiesta.

180.   As a result of this conversion, Ms. Bresee suffered damages in an amount to be determined by this Court.

181.   In converting the Fiesta, the Steve Coury Defendants acted with an evil mind, intending to economically injure Ms. Bresee or consciously disregarding the substantial risk that its conduct would cause significant economic harm to Ms. Bresee.

182.   Ms. Bresee is therefore entitled to recover her actual and punitive damages.

183.   Pursuant to the express terms of the RISC, Wells Fargo is subject to any claims or defenses, which Ms. Bresee could assert against Steve Coury Ford.

184.    As the current holder of the contract, Wells Fargo is subject to any claims and defenses that Ms. Bresee could assert against Steve Coury Ford.  16 C.F.R. 433.

## **JURY TRIAL REQUESTED**

185.   Ms. Bresee requests a jury on all issues so triable.

WHEREFORE, Plaintiff prays that this Court enter Judgment against Defendants for the following:

　　　　a.　　Under Cause of Action No. 1: actual damages, statutory damages, punitive damages, attorney's fees and costs;

b.   Under Cause of Action No. 2: Actual damages;

c.   Under Cause of Action No. 3: Actual damages;

d.   Under Cause of Action No. 4: Actual and punitive damages;

e.   Under Cause of Action No. 5: Actual and punitive damages;

f.   Attorneys' fees and costs pursuant to A.R.S. § 12-341.01 and 12-341;

g.   Interest on the judgment rendered herein at the maximum lawful rate from the date of its rendition until paid in full; and,

h.   Such other and further relief as this Court deems just and proper.

DATED February 6, 2015.

CHOI & FABIAN, PLC


By: */s/ Veronika Fabian*
Veronika Fabian
Attorneys for Plaintiff